**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: _____

EL TORO LOCO CHURRASCARIA, LLC
a Florida limited liability company, and
ETLC TRADEMARKS, LLC,
a Florida limited liability company,

       Plaintiff,

v.

MAGIC CITY ASSOCIATES, LLC
d/b/a CARNICERO LATIN STEAKHOUSE,
a Florida limited liability company,
RASIEL REYES, an individual, and
ANGEL SANCHEZ, an individual.

       Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiffs EL TORO LOCO CHURRASCARIA, LLC ("El Toro") and ETLC TRADEMARKS, LLC ("ETLC") (collectively, "Plaintiffs"), by and through undersigned counsel, sues Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE ("Carnicero"), RASIEL REYES ("Reyes"), and ANGEL SANCHEZ ("Sanchez") (collectively, "Defendants"), and alleges as follows:

### Nature of Action

"The best way to be successful is to find someone who already is successful and where you want to be and copy them 100%. Take all of that person's habits and copy what they do. … That's the easiest way to have whatever success you want in your life. I've experimented with this in my life. … This applies in business too. Find that person that has already had the success in their life

that you want for yourself and start doing exactly what that person is doing daily, and you'll see how quickly you become successful."

The foregoing words were made by Defendant Angel Sanchez. His mindset represents how he and Defendant Rasiel Reyes conspired to create Defendant Carnicero—a carbon copy of El Toro and ETLC. As demonstrated below, Defendant Carnicero offers virtually the same menu as El Toro, leverages the same media and advertising strategy as El Toro, and has copied and infringed on ETLC's intellectual property. Further, Defendants have tortiously interfered with several of El Toro's contractual relationships by poaching its employees in violation of existing non-compete agreements. Defendants' conduct was intentional and aimed at leveraging the good will earned by El Toro and ETLC and usurping it for their own pecuniary benefit. Defendants' intentional and unjustifiable conduct should not be countenanced.

## Parties

1.      El Toro is a limited liability company organized pursuant to the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida. El Toro is the owner of a chain of restaurants and food trucks that offer a Latin-themed, churrascaria-style dining experience with a vibrant atmosphere, exceptional service, and delectable cuisine.

2.      ETLC is a limited liability company organized pursuant to the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida. ETLC is the owner of the intellectual property utilized in conjunction with the operation of a chain of restaurants bearing the name "El Toro Loco Churrascaria."

3.      Carnicero is a limited liability company organized pursuant to the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida. Carnicero operates a restaurant that is commonly known as "Carnicero Latin Steakhouse."

4.      Reyes is an individual that resides in Miami-Dade County, Florida. Reyes is a manager of Carnicero and was actively involved in the conduct alleged in this Complaint.

5.      Sanchez is an individual that resides in Miami-Dade County, Florida. Sanchez is a manager of Carnicero and was actively involved in the conduct alleged in this Complaint.

## Jurisdiction and Venue

6.      This action seeks an award of damages the sum or value of which exceeds $75,000.00 exclusive of interest, costs and attorneys' fees.

7.      This Court possesses original subject matter jurisdiction over the federal trademark infringement claim under § 43(a) of the Lanham Act found at 15 U.S.C. § 1125, and supplemental jurisdiction over the directly related state law claims under 28 U.S.C. § 1367.

8.      Carnicero's use of social media to promote its expo kitchen and grill master cutting table, which unlawfully misappropriates ETLC's trade dress, impacts interstate commerce.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in this judicial district.

## Factual Allegations

### A.  El Toro and ETLC.

10.      In 2014, El Toro began as a food truck concept focused on serving prime-quality meats at affordable prices.

11.      El Toro sought to express its offerings via a Latin-themed, churrascaria-style steakhouse concept dedicated to serving prime-quality meats at affordable prices—an offering not found in traditional steakhouses—in a vibrant atmosphere that provides exceptional service.

12.     Three years later, El Toro brought its concept to life and opened its first location in Tamiami, Florida.

13.     El Toro resonated with the community.

14.     Since then, El Toro has grown its business to six restaurants and five food trucks.

15.     Given its significant growth in a short period of time, El Toro formed ETLC to protect the intellectual property that El Toro created and developed.

16.     ETLC is the owner of the intellectual property utilized for the operation of the unique and distinctive restaurant concept that has become synonymous with Plaintffs' brand ("ETLC Concept").

17.     ETLC's intellectual property also includes the expo design and grill master cutting table in front of the Brazilian rotisserie grill, which is an invention under "Patent Pending" by Aldo Espinosa and Mara Espinosa, both of whom are from ETLC.

18.     ETLC's design was memorialized in a trade dress application that is pending approval under 98120339. A true and correct copy of this trade dress application is **Exhibit A**.

**B.  Reyes and Sanchez seek out El Toro.**

19.     Reyes and Sanchez, individuals associated with a company known as Miami Vice Lifestyle, became frequent patrons of the El Toro restaurant located at 8444 SW 8th Street, Miami, FL 33144 (the "Westchester Location").

20.     Through their frequent visits, Reyes and Sanchez befriended the operator of the Westchester Location, Joaquin Martinez ("Martinez").

21.     In exchange for providing the Westchester Location certain social media advertising, Reyes and Sanchez received complimentary food and beverages, as well as catering services.

22.      Reyes, Sanchez, and their associates, including members of Miami Vice Lifestyle, began to frequent the Westchester Location daily.

23.      These frequent visits were disguised in a friendly nature.

24.      But in reality, Reyes and Sanchez forged a relationship with Martinez to invade his confidences and surreptitiously learn intimate knowledge, insight, and operational proprietary information related to the ETLC Concept.

25.      Indeed, upon information and belief, due to Reyes and Sanchez's false pretenses, Reyes and Sanchez gained information about Plaintiffs' procedures, operational standards, buildouts, blueprints, and the core elements that made the ETLC Concept unique and successful.

26.      To prevent Martinez from suspecting what Reyes and Sanchez were befriending him for, Reyes and Sanchez took Martinez on vacations and provided him with other fringe benefits to continue and spur their relationship.

27.      All the while, Reyes and Sanchez continued to unlawfully acquire Plaintiffs' proprietary and confidential information without authorization.

**C. Reyes and Sanchez develop Carnicero and target and interfere with ETLC's business relationships**.

28.      In 2020, Reyes and Sanchez, after acquiring ETLC Concept's confidential and proprietary information, formed a partnership with investors, and initiated the development of Carnicero.

29.      Upon information and belief, Defendants leveraged Plaintiffs' contacts, reputation, achievements, and brand awareness to facilitate meetings with potential investors within the restaurant industry, all with the intent of unlawfully replicating the ETLC Concept.

30.     In addition, as more fully alleged below, Defendants have gone to extreme lengths to mirror the development and success of El Toro by soliciting and/or utilizing El Toro's vendors, suppliers, advertising and marketing contacts, and social media influencers.

31.     The result of Defendants' unlawful competition against Plaintiffs is the creation of Carnicero, which is a strikingly similar restaurant concept to El Toro.

32.     As part of their unlawful scheme, Reyes and Sanchez solicited funding and/or equipment, materials, or services from vendors and entities that Plaintiffs had or were currently collaborating with, including:

a.   Universal Hood Tech, which supplied the Hood systems that are used in ETLC restaurants;

b.   Zafill Distribution, which supplied the Scheer Brazilian grills that are used in the ETLC restaurants;

c.   Security Fire Prevention, which supplied the fire suppression systems currently being used at ETLC restaurants;

d.   DC Style, which ETLC engaged to create and manufacture its merchandise and uniforms.

33.     Defendants learned that Plaintiffs had business relationships with these vendors through Reyes and Sanchez's conversations with Martinez.

34.     Carnicero intentionally interfered with ETLC's business relationships by engaging each of these vendors and ordering identical or substantially similar products and services leveraged by ETLC.

35.     Such interference was unjustified because it was enacted to usurp the good will and market share that Plaintiffs had gained through their efforts.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**D. Defendants mimic Plaintiffs' menu offerings**.

36.     After intentionally and unjustifiably interfering with ETLC's business relationships, Carnicero then set out to mimic El Toro's menu offerings.

37.     One of El Toro's signature appetizers is the serrano croquettes, which are distinctively round. Carnicero also advertises as one of its signature appetizers similarly-shaped serrano croquetas. Below are photographs[1] of the two:



38.     Another signature appetizer offered by El Toro is the frituras de malanga, which are presented in a distinctively round shape and are accompanied by a dipping sauce in a metal ramekin. Carnicero offers frituras de malanga in an identical format:



---

[1] On the left is the food item offered by El Toro. On the right is the food item offered by Carnicero. The foregoing sequencing and presentation apply to all photographs in this Complaint.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

39.     El Toro offers on its menu picanha steak that is served pre-sliced and accompanied by a chimichurri sauce in a metallic ramekin, a side of black beans, and a rosemary sprig. Carnicero serves its picanha steak platter in an identical manner:

 

40.     El Toro's menu offers a churrasco steak that is served pre-sliced and is accompanied with a side of maduros, chimichurri sauce in a metal ramekin, and a and a rosemary sprig. Carnicero serves its churrasco steak in an identical manner:

 

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

41.     The filet mignon entrée at El Toro is advertised on a wooden board with a pinch of salt and rosemary sprigs. Caniceros promotes the same advertisement for its filet mignon:



42.     El Toro serves its filet mignon entrée with a side of fried yuca accompanied with a pinch of salt, rosemary sprigs, and chimichurri sauce in a metal ramekin. Carnicero serves its filet mignon entrée in the same manner:

 

43.     El Toro's New York strip steak is served pre-sliced, with a side of tostones, a side of chimichurri sauce in a metal ramekin, and a rosemary sprig. Carnicero serves its New York strip steak in an identical manner:

 

44.     El Toro's menu offers a picada platter is served on a wooden board with a variety of meat, including picanha, churrasco, pork tenderloin, and sausage. Carnicero' menu offers an identical platter, with a virtually identical choice of meats, served in the same fashion:

 

45.     El Toro offers its customers lamb chops, which are served on a dark plate, with a pinch of salt and rosemary sprigs, accompanied with a side of chimichurri sauce in a metal ramekin. Caniceros also offers lamb chops and serves it in an identical manner:

 

46.     El Toro's menu includes a steak sandwich, which is served with a side of fries and dipping sauces in metal ramekins. Caniceros also offers an identical steak sandwich, which is accompanied by the same side and dipping sauces:

 

47.     El Toro's also offers its customers grilled lobster, which is served butterflied and is accompanied by dipping sauces. Caniceros offers the same item and serves it in the same way:

 

48.     El Toro's menu offers its customers a chicken breast entrée with two sides of rice and black beans, accompanied with a side of chimichurri sauce, a rosemary sprig, and served on a wooden board. Caniceros' menu offers the same dish, served in the same manner:

 

49.     El Toro offers a cheeseburger with a basket of french-fries and a ramekin of ketchup. Carnicero offers the same item, which is served in the same way:

 

50.     El Toro and Carnicero also offer identical side dishes and serve them in a substantially similar—if not identical—way.

51.     Both El Toro and Carnicero serve rice on a black dish:



52.     Both El Toro and Carnicero serve maduros in black dishes:



53.     Both El Toro and Carnicero serve tostones in a metallic basket:



54.     Both El Toro and Carnicero serve fried yuca in a metallic basket:



55.     Both El Toro and Carnicero serve its tamal on a curved, black plate with a pico de gallo presentation running lengthwise over the top of the tamal:



56.     Both El Toro and Carnicero serve its grilled vegetables through a kebab presentation on a wooden board:



57.     Both El Toro and Carnicero serve its chorizo on a wooden plate:



58.     Notably, Carnicero even copied Plaintiffs' placement of its logo on the wooden boards that it serves its dishes on:



**E.  Defendants infringe on ETLC's intellectual property**.

59.     ETLC's trade dress is distinctive because it promotes the unique customer experience of a chef butchering, preparing, and cooking the customer's selected meats just a few feet away from where customers are sat.

60.     ETLC's trade dress is non-functional because the location of the expo design and grill master cutting table in front of the Brazilian rotisserie grill does not affect the process of butchering, preparing, or cooking the customer's selected meats.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

61.     Reyes and Sanchez, having frequented ETLC's restaurants, infringed on ETLC's trade dress when they installed at Carnicero a strikingly similar, if not identical, expo kitchen and grill master cutting table—in front of its own Brazilian rotisserie grill. Below is a comparison:



62.     Indeed, Defendants' misappropriation of ETLC's trade dress is evident when compared to both of ETLC's original design sketches below:



**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

63.     Thus, Carnicero has also infringed on ETLC's trade dress. *See supra* at ¶¶ 16-17.

**F.  Defendants mimic and leverage Plaintiffs' branding and legacy media strategy**.

64.     As part of its branding strategy, Plaintiffs engaged DC Style to produce hats with its logo to promote the ETLC Concept and its brand.

65.     Shortly after Carnicero began operating, it also engaged DC Style to produce hats with a logo that is substantially similar to ETLC's logo.

66.     Below is a comparison of the two:



67.     For Plaintiffs' legacy media strategy, Plaintiffs engaged Marlene Maseda as its publicist to help promote the ETLC Concept and Plaintiffs' brand.

68.     Ms. Maseda worked with Plaintiffs to create and develop a marketing and branding campaign that successfully spread awareness about ETLC Concept, Plaintiffs' brand, and Plaintiffs' goods and services.

69.     Over the years, Ms. Maseda and Plaintiffs had a longstanding business relationship that was mutually beneficial.

70.     Shortly after Defendants launched Carnicero, they learned about the business relationship between Plaintiffs and Ms. Maseda and the marketing and branding campaign that she successfully led for Plaintiffs.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

71.     Defendants contacted Ms. Maseda, and contracted her to host a press, local Miami media, and social media influencer dinner to help launch Carnicero.

72.     Many of the legacy media and social media influencers that Plaintiffs had business relationships with, as explained below, were introduced by Ms. Maseda to Carnicero and they all attended the dinner.

73.     Defendants also contracted Ms. Maseda to have Carnicero featured on local Miami media—an identical strategy that Ms. Maseda previously leveraged for Plaintiffs.

74.     For example, through Ms. Maseda, Plaintiffs were featured on Telemundo in a segment known as "A La Carta" with Mariana Rodriguez. Later, Carnicero was featured on the same segment:



75.     As another example, through Ms. Maseda, ETLC Concept was featured on a segment aired on the Spanish network Telemundo known as "El Plato Fuerte."

76.     Shortly after, through Ms. Maseda, Carnicero was featured on the same television segment:



77.     Thus, Carnicero intentionally and unjustifiably interfered with Plaintiffs' business relationship with Ms. Maseda.

78.     Separately, Plaintiffs were featured on Mega TV in a segment entitled "Entretenimiento Con Ely." Carnicero followed suit and was featured on the same segment:



**G. Defendants mimic and leverage Plaintiffs' social media strategy**.

79.     Defendants also implemented a targeted social media campaign that sought to have influencers in the local Latin-American community promote ETLC Concept and Plaintiffs' brand.

80.     José Pérez Córdoba, who is known professionally as "Carlucho," and has 118,000 Instagram followers (@ and hosts the television show "Carlucho En Familia" on Mega TV.

81.     Carlucho promoted ETLC Concept on his television show:



82.     Then, ETLC Concept promoted Carlucho on its Instagram. Afterward, Carnicero targeted Carlucho, who was later promoted on Carnicero' Instagram:



83.    "El Micha" is Cuban reggaeton artist Luis Miguel Santiago Gonzalez, who previously appeared on Plaintiffs' social media to promote ETLC Concept.

84.    "El Micha" was featured on Plaintiffs' social media to promote the ETLC Concept wearing Plaintiffs baseball cap. Not long after, Carnicero recruited "El Micha" to promote Carnicero on its Instagram—even fitting him with a baseball cap that bears the Carnicero logo:



85.    Another local Latin-American social media influencer who worked with Plaintiffs to promote the ETLC Concept is Diana Fuentes, who appears below in a green dress. After being featured on Plaintiffs' social media, Carnicero followed suit:



86.     Plaintiffs featured local Latin-American social media influencer Kemely Llanes on its social media to promote the ETLC Concept. Shortly after, Ms. Llanes was also featured on Carnicero' social media:



87.     Plaintiffs featured Alexis Valdes, a prominent Cuban actor, comedian, and poet, on El Toro's television show. Not long after, Mr. Valdes was featured on Carnicero' social media:



88.     Jean Carlos Santiago Pérez, known professionally as Guaynaa, is an internationally known Puerto Rican rapper and singer who was featured on ETLC's social media campaign. Afterward, Carnicero featured Guaynaa on its social media:



89.     Yaslen Clemente is a prominent fitness influencer (@yaslenxoxo) with over three million followers across social media platforms.

90.     Over the years, Ms. Clemente has frequented Plaintiffs' restaurants and VIP events.

91.     Plaintiffs featured Ms. Clemente various times on its social media to promote the ETLC Concept. Afterward, Carnicero sought out and featured Ms. Clemente on its social media:



92.     Álvaro Lenier Mesa, a Cuban musical artist known professionally as Lenier, was routinely featured on Plaintiffs' social media.

93.     Indeed, Plaintiffs dedicated an entire episode of its television show to broadcast Mr. Mesa's birthday party, which Plaintiffs hosted and financed. Later, Carnicero sought out and featured Lenier on its social media:



94.     Plaintiffs are also involved in the combat sport industry as a sponsor to the Bare-Knuckle Fighting Championship.

95.     One of the participants in the Bare-Knuckle Fighting Championship that Plaintiffs sponsor is Cuban fighter, Freddy Masabo.

96.     Plaintiffs featured Mr. Masabo on its social media with one of Plaintiffs' principals while wearing an ETLC Concept baseball cap. Unsurprisingly, Carnicero featured Mr. Masabo on its social media wearing a Carnicero baseball cap:



97.     Plaintiffs also had a business relationship with another participant in the Bare-Knuckle Fighting Championship: Cuban fighter Alberto "El Indio" Blas.

98.     Plaintiffs' affiliate, A & J Entertainment Group Corp., d/b/a El Toro Loco MMA had a management agreement with Mr. Blas.

99.    El Toro Loco MMA assumed thousands of dollars of Mr. Blas' prior debts and helped secure appearances for Mr. Blas in the Bare-Knuckle Fighting Championship, including a championship fight, which Mr. Blas won.

100.    Indeed, Plaintiffs featured Mr. Blas on its social media to promote the ETLC Concept. Shortly after becoming a prominent fighter in the Bare-Knuckle Fighting Championship, Carnicero, followed suit:



**H.  Defendants unlawfully poach El Toro's employees**.

101.    On March 22, 2023, Danay Cardenas Valero was hired by El Toro as a waitress.

102.    On May 26, 2023, Gabriela Marin Rodriguez was hired by El Toro as a take out services employee.

103.     During the onboarding process, Ms. Valero and Ms. Rodriguez received specialized and unique training from El Toro.

104.     Since its inception in 2014, El Toro has spent a considerable amount of time and money to develop this specialized and unique training program.

105.     During their employment with El Toro, Ms. Valero and Ms. Rodriguez were routinely exposed to El Toro's confidential and proprietary information, which included, but is not limited to: its best practices, its customer data, and other trade secrets.

106.     As a condition precedent to her employment, Ms. Valero and Ms. Rodriguez voluntarily signed that certain *Non-Compete Agreement*, which stipulated that for one year after their employment with El Toro, they could not work for, or start a competing company. A true and correct copy of the Valero Non-Compete Agreement is **Exhibit B**; a true and correct copy of the Rodriguez Non-Compete Agreement is **Exhibit C**.

107.     Recently, Ms. Valero and Ms. Rodriguez each ended their employment with El Toro and began their employment with Carnicero.

108.     As explained above, Carnicero is a direct competitor of El Toro.

109.     When Carnicero hired Ms. Valero and Ms. Rodriguez, it knew or should have known that Ms. Valero and Ms. Rodriguez were subject to their respective non-compete agreements.

110.     Notwithstanding, Carnicero intentionally and unjustifiably interfered with the contractual relationships that El Toro had with Ms. Valero and Ms. Rodriguez.

111.     Defendants' intentional and unlawful actions demonstrate a deliberate effort to harm Plaintiffs' brand.

112.    ETLC, the rightful owner of the Restaurant's intellectual property, has unquestionably suffered damage due to the devaluation and diminishment of its Intellectual Property's value resulting from Carnicero's unauthorized replication of the ETLC concept.

113.    Moreover, El Toro has suffered significant damages through Defendants' tortious conduct.

114.    All conditions precedent to the filing of this lawsuit, if any, have occurred, have been performed, or have otherwise been waived.

## COUNT I—TRADE DRESS INFRINGEMENT
### (ETLC v. Defendants)

115.    ETLC realleges all allegations in paragraphs 1 through 111 as if set forth herein.

116.    ETLC's trade dress is demonstrated in paragraphs 57 through 61 of the Complaint.

117.    The unmistakable similarity between ETLC's trade dress and the infringing use of that trade dress by Defendants is at paragraph 60 of the Complaint.

118.    The features of the two products, the location of the expo kitchen and grill master cutting table, are primarily non-functional.

119.    ETLC's product is distinctive because El Toro created this unique product.

120.    As a result of Defendants' infringement, ETLC has suffered damages.

WHEREFORE, Plaintiff ETLC TRADEMARKS, LLC, respectfully demands judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for all available damages, pre-judgment interest, post-judgment interest, and costs, along with an award of attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT II—CONVERSION
### (Plaintiffs v. Defendants)

121.     Plaintiffs reallege all allegations in paragraphs 1 through 111 as if set forth herein.

122.     As explained in detail above, Plaintiffs are the owners of the confidential and proprietary information that includes their best practices, customer data, operational methods, media strategy, marketing strategy, and other trade secrets.

123.     Plaintiffs, through Martinez, provided Reyes and Sanchez with such trade secrets and confidential and proprietary information.

124.     Those trade secrets and confidential information were not utilized for Plaintiffs' business and the profits from said trade secrets and confidential information were never realized by Plaintiffs and were instead realized by Defendants.

125.     Defendants have not compensated Plaintiffs for the confidential information and trade secrets which they continue to profit from.

WHEREFORE, Plaintiffs EL TORO LOCO CHURRASCARIA, LLC and ETLC TRADEMARKS, LLC, respectfully demand judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for all available damages, pre-judgment interest, post-judgment interest, and costs, along with an award of attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT III—TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
### (El Toro v. Defendants)

126.     El Toro realleges all allegations in paragraphs 1 through 111 as if set forth herein.

127.     El Toro had a contractual relationship with Ms. Valero. *See* Exhibit B.

128.     El Toro had a contractual relationship with Ms. Rodriguez. *See* Exhibit C.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

129.     Defendants knew about the contractual relationship between El Toro and Ms. Valero.

130.     Defendants knew about the contractual relationship between El Toro and Ms. Rodriguez.

131.     Defendants intentionally interfered with the contractual relationship between El Toro and Ms. Valero when Carnicero hired Ms. Valero as an employee during the restrictive period.

132.     Defendants intentionally interfered with the contractual relationship between El Toro and Ms. Rodriguez when Carnicero hired Ms. Rodriguez as an employee during the restrictive period.

133.     Defendants unjustifiably interfered with the contractual relationship between El Toro and Ms. Valero because she was subject to a non-compete agreement that prevented her from working for a competitor like Carnicero until the restrictive period expired.

134.     Defendants unjustifiably interfered with the contractual relationship between El Toro and Ms. Rodriguez because she was subject to a non-compete agreement that prevented her from working for a competitor like Carnicero until the restrictive period expired.

135.     As a result of Defendants' intentional and unjustifiable interference, El Toro has suffered damages.

WHEREFORE, Plaintiff EL TORO LOCO CHURRASCARIA, LLC, respectfully demands judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for all available damages, pre-judgment interest, post-judgment interest, and costs, along with an award of attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT IV—VIOLATION OF FLORIDA STATUTE § 501.204
### (Plaintiffs v. Defendants)

136.    Plaintiffs reallege all allegations in paragraphs 1 through 111 as if set forth herein.

137.    Florida Statute § 501.204 declares that unconscionable, unfair, and deceptive acts or practices, or behavior while conducting trade or commerce is unlawful.

138.    Trade or commerce has been defined to include the sale of any good or service, any other article, commodity, or thing of value.

139.    Under Florida Statute § 501.204, the sale of food and the services provided at a restaurant like Carniercos constitutes trade and/or commerce.

140.    As explained in detail above at paragraphs 27 through 111 of the Complaint, Defendants have intentionally, unjustifiably, and unlawfully damaged Plaintiffs business by imitating its menu, interfering with its business and contractual relationships, copying its social media and marketing strategy, and poaching its employees.

141.    As explained in detail above at paragraphs 18 through 26 of the Complaint, Defendants behavior was deceptive and aimed at extracting as much as of Plaintiffs' confidential and proprietary information as possible for their own pecuniary benefit.

142.    Defendants' unlawful behavior has caused substantial harm to Plaintiffs.

WHEREFORE, Plaintiffs EL TORO LOCO CHURRASCARIA, LLC and ETLC TRADEMARKS, LLC, respectfully demand judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for all available damages, pre-judgment interest, post-judgment interest, and costs, along with an award of attorneys' fees and costs, and any other relief the Court deems proper.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## COUNT V—INJUNCTIVE RELIEF
### (Plaintiffs v. Defendants)

143.    Plaintiffs reallege all allegations in paragraphs 1 through 111 as if set forth herein.

144.    Plaintiffs have a substantial likelihood on the merits against Defendants because the evidence will show that Defendants have intentionally, unjustifiably, and unlawfully damaged Plaintiffs business by imitating its menu, interfering with its business and contractual relationships, copying its social media and marketing strategy, and poaching its employees.

145.    Absent an injunction, there is a substantial threat that Plaintiffs will suffer irreparable harm because Defendants continue to leverage the confidential and proprietary information that was disclosed without authorization by Martinez.

146.    The balance of equities weighs in Plaintiffs' favor and supersedes any harm that Defendants might suffer because Defendants learned of and gained Plaintiffs' confidential and proprietary information under false pretenses.

147.    Entering a temporary injunction against Defendants will serve the public interest because it will promote the policy that individuals cannot leverage the confidential and proprietary information learned under false pretenses for their pecuniary benefit.

WHEREFORE, Plaintiffs EL TORO LOCO CHURRASCARIA, LLC and ETLC TRADEMARKS, LLC, respectfully demand judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for a temporary injunction prohibiting Defendants from: (1) Operating Carnicero and any of the restaurants that are affiliated with it until this action is concluded; (2) preventing Defendants from opening a separate by similar venture that is related to El Toro or any restaurant or food truck in the ETLC Concept; and (3) any other relief the Court deems proper.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## COUNT VI—CIVIL CONSPIRACY
### (Plaintiffs v. Reyes and Sanchez)

148.    Plaintiffs reallege all allegations in paragraphs 1 through 111 as if set forth herein.

149.    Reyes and Sanchez made an agreement to befriend Martinez to learn Plaintiffs' proprietary and confidential information.

150.    Reyes and Sanchez's agreement was unlawful because it sought to learn Plaintiffs' proprietary and confidential information under false pretenses because they desired to open their own competing venture to usurp Plaintiffs' market share.

151.    Reyes and Sanchez committed an overt act in furtherance of their conspiracy by frequenting Plaintiffs' Westchester Location, taking Martinez on vacation, and providing him with other fringe benefits.

152.    As a result of Reyes and Sanchez's conspiracy, Plaintiffs have suffered significant harm.

WHEREFORE, Plaintiffs EL TORO LOCO CHURRASCARIA, LLC and ETLC TRADEMARKS, LLC, respectfully demand judgment against Defendants MAGIC CITY ASSOCIATES, LLC, d/b/a CARNICERO LATIN STEAKHOUSE, RASIEL REYES, and ANGEL SANCHEZ for all available damages, pre-judgment interest, post-judgment interest, and costs, along with an award of attorneys' fees and costs, and any other relief the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated: December 18, 2024

Respectfully submitted,

**BRITO, PLLC**
*Counsel for Plaintiffs*
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office:  305-614-4071
Fax:  305-440-4385

By: /s/ *Alejandro Brito*
**ALEJANDRO BRITO**
Florida Bar No. 098442
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com
**CECILIA S. MIRANDA**
Florida Bar No. 1025435
Primary: cmiranda@britopllc.com
**IAN MICHAEL CORP**
Florida Bar No. 1010943
Primary: icorp@britopllc.com